NOTICE

Decision filed 12/29/22. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2022 IL App (5th) 200313-U

NO. 5-20-0313

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Jackson County. |
| | ) | |
| v. | ) | No. 15-CF-224 |
| | ) | |
| CHRISTOPHER T. HARRIS, | ) | Honorable |
| | ) | Ralph R. Bloodworth III, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE VAUGHAN delivered the judgment of the court.
Justices Welch and Moore concurred in the judgment.

**ORDER**

¶ 1    *Held*:    Where there was no potentially meritorious argument that the circuit court erred in denying defendant's motion to withdraw his guilty plea or reconsider his sentence, we grant defendant's appointed counsel on appeal leave to withdraw and affirm the circuit court's judgment.

¶ 2    Defendant, Christopher T. Harris, appeals the circuit court's order denying his motion to withdraw his guilty plea or, in the alternative, reconsider his sentence. Defendant's appointed attorney on appeal, the Office of the State Appellate Defender (OSAD), filed a motion to withdraw as counsel, arguing this appeal presents no arguably meritorious issue. See *Anders v. California*, 386 U.S. 738 (1967). OSAD notified defendant of its motion. This court provided defendant with an opportunity to file a response, but he has not done so. After reviewing the record and considering OSAD's motion and supporting memorandum, we agree this appeal presents no issue

1

of arguable merit. Therefore, we grant OSAD leave to withdraw and affirm the circuit court's judgment.

¶ 3                                    BACKGROUND

¶ 4     Defendant was charged with armed robbery with a firearm (720 ILCS 5/18-2(a)(2) (West 2014)), aggravated battery (*id.* § 12-3.05(d)(4)(i)), unlawful possession of a weapon by a felon (*id.* § 24-1.1(a)), and obstruction of justice (*id.* § 31-4(a)(1)) following a robbery at a Circle K gas station in Carbondale. Defendant's appointed counsel requested a fitness hearing based on defendant's behavior during and after the offense. Dr. Fred Klug evaluated defendant and found him fit to stand trial. At the fitness hearing, the parties stipulated to Dr. Klug's report. After considering the report, the court found defendant fit for trial.

¶ 5     Defendant moved to quash his arrest and suppress evidence, arguing the officer had no reasonable suspicion to conduct a traffic stop on defendant. At the hearing on the motion, Officer Harsy testified that he observed a vehicle turn from East College Street the wrong way onto South Graham Street. The vehicle turned in to a parking lot, and Officer Harsy pulled up behind it to effect a traffic stop. Defendant told Officer Harsy that his name was Cortez Harris but paused while doing so and had difficulty spelling it. Defendant believed that his driver's license was suspended. As Officer Harsy began to open the door, the dispatcher informed him that a nearby Circle K had just been robbed by a "black male in a dress with a wig on and glasses." Officer Harsy observed that defendant was wearing "female leggings *** knee-high female boots, and a cocktail dress that was hiked up around his waist." A wig was under the passenger seat.

¶ 6     Defendant fled when Officer Harsy attempted to detain him. Defendant was later apprehended in a nearby building. In between defendant's car and the building was a black purse

2

containing money and cigarettes taken during the Circle K robbery. After hearing this testimony, the circuit court denied the motion to quash defendant's arrest and suppress evidence.

¶ 7 Immediately thereafter, the parties announced a plea agreement. In exchange for defendant's guilty plea, the State agreed to amend the armed robbery charge to remove the firearm enhancement and dismiss the remaining charges. There was no agreement on a specific sentence.

¶ 8 The circuit court ascertained that defendant understood the nature of the charge, the minimum and maximum sentences, and that he was giving up his right to a jury trial as well as other associated rights. Defendant assured the court that no one threatened him or promised him anything other than the stated terms of the agreement to induce his plea, and that he was making the agreement of his own free will.

¶ 9 The court also asked defendant whether he suffered from any physical or mental disability. Defendant explained that he had "ADHD, bipolar and paranoia." He had not taken any medications that day but would be taking Zyprexa, Prazosin, and Zoloft later that night. Defendant assured the court that he was able to proceed. After the State presented a factual basis, the court accepted the plea.

¶ 10 A presentence investigation (PSI) report showed that defendant was previously convicted for possession of a stolen vehicle, unlawful possession of a weapon by a felon, and aggravated robbery. Defendant was on mandatory supervised release for the weapons charge when he committed the instant offense. Following a sentencing hearing, the court sentenced defendant to 21 years' imprisonment.

¶ 11 Defendant filed a motion to withdraw the plea or, in the alternative, reconsider the sentence. The motion alleged that defendant had an "actual defense" to the charges but pled guilty on the advice of his attorney. Defendant argued that defense counsel was ineffective in that she failed to

3

obtain a second opinion on defendant's fitness for trial, adequately prepare defendant for the hearing on his motion to quash and suppress, call mitigation witnesses at the sentencing hearing, tell defendant that he had the right to present witnesses at such a hearing, object to various inaccuracies in the PSI, and move to suppress telephone calls that defendant made to his girlfriend from jail suggesting that he would manufacture an insanity defense. Defendant further claimed that he only entered into the plea agreement because he felt he had no choice after the court improperly denied his motion to quash and suppress.

¶ 12    Alternatively, the motion sought reconsideration of the sentence. It alleged that the court failed to give adequate weight to various factors in mitigation, sentenced defendant as if the firearm enhancement had not been deleted from the charge, considered evidence at the hearing that defendant did in fact have a gun, and relied on a PSI that contained unverified and inaccurate information.

¶ 13    Because defendant alleged that counsel was ineffective, the court conducted a *Krankel* hearing. See *People v. Krankel*, 102 Ill. 2d 181 (1984). In a colloquy with the court, defendant explained that he did not approve of the way counsel handled the suppression hearing, as she refused to ask several questions that defendant wanted asked. Defendant further complained that counsel did not challenge defendant's fitness finding, nor did she call any mitigation witnesses at sentencing although he provided her with names and telephone numbers prior to the hearing.

¶ 14    Ultimately, the circuit court denied the motion. On direct appeal, this court found that counsel's certificate did not comply with Illinois Supreme Court Rule 604(d) (eff. Mar. 8, 2016). We vacated the order denying defendant's postplea motion and remanded for the filing of a proper Rule 604(d) certificate, the filing of a new postplea motion if counsel deemed it necessary, and a

4

new hearing on any motion. *People v. Harris*, No. 5-16-0529 (2019) (unpublished summary order under Illinois Supreme Court Rule 23(c)).

¶ 15   Following remand, the circuit court appointed new counsel, who filed a new Rule 604(d) certificate but chose to adopt the prior motion. The court conducted another hearing on the motion but cautioned the parties that it did not want to "relitigate everything." Defendant acknowledged that his plea was knowing and voluntary but asserted that he pled guilty only because he thought he would have a "better chance of getting six years," while insisting that he had an actual defense. Defendant was upset that the State "broke the plea deal" by mentioning the gun at the sentencing hearing, and he believed the trial court sentenced him as if the firearm enhancement had not been removed. Original counsel testified that she did not think defendant was unfit and would not have stipulated to the fitness report if defendant did not consent to it.

¶ 16   The court again denied the motion, noting that nothing had really changed since the previous hearing. Defendant timely appealed.

¶ 17                                      ANALYSIS

¶ 18   OSAD contends there is no good-faith argument that the circuit court erred by denying defendant's motion to withdraw the plea or his requested reconsideration of the sentence or that, following remand, counsel failed to comply with Rule 604(d). We agree.

¶ 19   "A defendant has no absolute right to withdraw his guilty plea." *People v. Hughes*, 2012 IL 112817, ¶ 32. Instead, defendant "must show a manifest injustice under the facts involved." *Id*. "Withdrawal is appropriate where the plea was entered through a misapprehension of the facts or of the law or where there is doubt as to the guilt of the accused and justice would be better served through a trial." *Id.* Whether to grant a motion to withdraw a guilty plea is left to the circuit court's sound discretion and will not be reversed absent an abuse of discretion. *Id.*

5

¶ 20    OSAD concludes that none of the various grounds for withdrawing the plea argued in the motion and subsequent hearings has arguable merit. First, defendant was adequately admonished at the initial plea hearing.

¶ 21    Illinois Supreme Court Rule 402 requires that, before a defendant pleads guilty, the court must ensure that the defendant understands (1) the nature of charges; (2) the applicable minimum and maximum sentences, including any enhancements and potential consecutive sentences; (3) his right to plead guilty or not guilty; and (4) that if he chooses to plead guilty, he waives his right to a jury trial and his right to confront the witnesses. Ill. S. Ct. R. 402(a) (eff. July 1, 2012). Substantial compliance with Rule 402 satisfies due process. *People v. Whitfield*, 217 Ill. 2d 177, 195 (2005).

¶ 22    Here, the court told defendant about the nature of the charge and the minimum and maximum sentences. The court further told defendant:

> "If you were to stand trial on your prior plea of not guilty, you would have the right, as I said before, to a trial by a jury or by a judge without a jury. You would have the right to confront and cross-examine the State's witnesses against you. You would have the right to subpoena and have testify anyone that you wish to on your behalf. You would have the right to testify if you chose to waive or give up your right that you otherwise have to remain silent. And the State would have the burden of proving your guilt beyond a reasonable doubt. If you continue in your plea, you are giving up all of those rights."

Defendant said that he understood.

¶ 23    Although the court did not specifically tell defendant that he had the right to persist in his not-guilty plea, the court described in detail the rights defendant would have if he "were to stand trial on [his] prior plea of not guilty." In doing so, the court conveyed to defendant that he would

6

have those rights if he maintained his plea of not guilty. Generally, where a defendant is otherwise fully admonished, a circuit court's failure to inform the defendant of his or her right to persist in a not-guilty plea does not taint the guilty plea. *People v. Radunz*, 180 Ill. App. 3d 734, 741-42 (1989).

¶ 24     Moreover, defendant never claimed that he did not understand his rights. At the second hearing on defendant's motion to withdraw his guilty plea, defendant testified that his guilty plea was knowing and voluntary. He said that, after losing the suppression motion, he decided to accept the plea offer, believing that it gave him the best chance of "getting six years." A mistake in judgment is not grounds for withdrawal of a plea. *People v. Staple*, 233 Ill. App. 3d 8, 10 (1992).

¶ 25     OSAD also concludes that there is no meritorious argument that defendant's plea was involuntary on the ground that he was unfit. Although the prosecution of a defendant who is not fit to stand trial violates due process (*People v. Haynes*, 174 Ill. 2d 204, 226 (1996)), a defendant is presumed fit to stand trial or plead guilty and be sentenced (725 ILCS 5/104-10 (West 2014)). A defendant will be deemed unfit only where, due to "his mental or physical condition, he is unable to understand the nature and purpose of the proceedings against him or to assist in his defense." *Id.*; *People v. Easley*, 192 Ill. 2d 307, 318 (2000). "A circuit court's ruling on the issue of fitness will not be reversed unless it is against the manifest weight of the evidence." *People v. Jamison*, 197 Ill. 2d 135, 153 (2001).

¶ 26     Here, at defense counsel's request, the court had defendant evaluated for fitness. Dr. Klug concluded defendant was fit for trial. The parties stipulated to the report and, after considering the report, the court found defendant fit. Defense counsel testified—at the plea hearing and at later proceedings—that she had no concern regarding defendant's fitness. *People v. Eddmonds*, 143 Ill. 2d 501, 518 (1991) ("The representations of defendant's counsel concerning the competence of

7

his client, while not conclusive, are another important factor to consider."). Based on this record, we cannot find the court's finding of fitness was against the manifest weight of the evidence.

¶ 27    We also agree that no meritorious contention can be made that defendant was unfit due to being improperly medicated. Prior to accepting the plea, the court questioned defendant extensively about the medication he was taking. Although he had not taken his medication that day, defendant assured the court that he was able to proceed. He also later admitted that his plea was knowing and voluntary. Nothing in the record refutes this, as defendant answered questions appropriately and never appeared confused regarding the court proceedings.

¶ 28    OSAD further concludes that it can make no meritorious argument that the circuit court erred in denying defendant's motion to quash and suppress, which allegedly "forced" him to accept the State's plea offer. "A [voluntary] guilty plea waives all nonjurisdictional defenses or defects." *People v. Horton*, 143 Ill. 2d 11, 22 (1991). Here, defendant made a measured decision to accept the guilty plea after losing the suppression motion, and thus may not directly challenge the court's ruling on that motion.

¶ 29    Nevertheless, we find the court did not err in denying the motion on the record as it stands. "The temporary detention of an individual during a vehicle stop is a seizure within the meaning of the fourth amendment and is subject to the reasonableness requirement of *Terry v. Ohio*, 392 U.S. 1, 21 (1968)." *People v. Cole*, 369 Ill. App. 3d 960, 965 (2007). A traffic violation generally provides a sufficient basis for a traffic stop. *People v. Rozela*, 345 Ill. App. 3d 217, 225 (2003). The Illinois Vehicle Code provides that on a roadway "designated for one-way traffic, a vehicle shall be driven only in the direction designated at all or such times as shall be indicated by official traffic control devices." 625 ILCS 5/11-708(b) (West 2014).

8

¶ 30    Officer Harsy testified that Graham Street was designated for one-way traffic, and he observed defendant's vehicle driving in the wrong direction. Officer Harsy therefore had reasonable grounds to conduct a traffic stop. As he was doing so, he learned that defendant matched the description of a suspect in a recent robbery. While defendant disputed this theory, we defer to the court's discretion in finding Officer Harsy credible, as there is nothing in the record to question its credibility determination. *People v. Richardson*, 234 Ill. 2d 233, 251 (2009) ("Findings of fact and credibility determinations made by the circuit court are accorded great deference and will be reversed only if they are against the manifest weight of the evidence.").

¶ 31    OSAD also concludes that it can make no good-faith argument that the circuit court should have granted the motion on the basis that defendant had an "actual defense" to the charges. We agree. The supreme court has stated:

> " 'Where it appears that the plea of guilty was entered on a misapprehension of the facts or of the law, or in consequence of misrepresentations by counsel or the State's Attorney or someone else in authority, or the case is one where there is doubt of the guilt of the accused, or where the accused has a defense worthy of consideration by a jury, or where the ends of justice will be better served by submitting the case to a jury, the court should permit the withdrawal of the plea of guilty and allow the accused to plead not guilty.' " *People v. Davis*, 145 Ill. 2d 240, 244 (1991) (quoting *People v. Morreale*, 412 Ill. 528, 531-32 (1952)).

¶ 32    Whether "a defense worthy of consideration" is an independent basis to withdraw a guilty plea has recently been called into question. One appellate court district noted that the supreme court has not used this formulation since 1993. *People v. Nieto-Roman*, 2019 IL App (4th) 180807, ¶ 33. Instead, more recent formulations such as *Hughes*, 2012 IL 112817, ¶ 32, have omitted

9

reference to a defense worthy of consideration and simply state that "[w]ithdrawal is appropriate where the plea was entered through a misapprehension of the facts or of the law or where there is doubt as to the guilt of the accused and justice would be better served through a trial."

¶ 33    In any event, the "defense" alleged here involved a successful relitigation of the suppression motion. We have already held that the circuit court properly denied the motion. Defendant had no presumptive right to relitigate the motion at trial (see *People v. Mathis*, 55 Ill. App. 3d 680, 685-86 (1977)) and has not provided any reason to think that doing so would have produced a more favorable result. Having already been considered and rejected, the suppression motion could not have formed the basis of a "defense worthy of consideration." Moreover, because he pled guilty immediately after the hearing on the suppression motion, defendant clearly knew about this potential "defense" when he pled guilty and made a calculated decision to accept the plea. See *Staple*, 233 Ill. App. 3d at 10.

¶ 34    OSAD further contends there is no merit to the argument that defense counsel provided ineffective assistance. To establish ineffective assistance, "[a] defendant must show that counsel's performance fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *People v. Manning*, 241 Ill. 2d 319, 326 (2011) (citing *Strickland v. Washington*, 466 U.S. 668, 694 (1984)).

¶ 35    Defendant's allegation that counsel was ineffective for not seeking a second opinion about his fitness is based on sheer speculation that a second expert might have provided a more satisfactory conclusion. Defendant provided no evidence that he actually was unfit at any point in the proceedings and, as noted, the record demonstrates the contrary.

¶ 36    We also agree with OSAD that no good-faith argument could be made that counsel was ineffective for not moving to suppress evidence of telephone calls defendant made while in jail awaiting trial. In those conversations, defendant told his girlfriend that he was going to "play crazy" and admitted that he had a gun in his purse. Defendant's motion argued that counsel was ineffective for failing to move to suppress these conversations on the grounds that defendant did not know he was being recorded and that he was "mentally ill and high on drugs" at the time the calls were made. However, given that defendant pled guilty, the evidence was never actually admitted.

¶ 37    Defendant stipulated to the factual basis for the plea and thus cannot establish the requisite prejudice from his attorney's alleged failure to seek suppression of this evidence. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973) (defendant forfeits any ineffective assistance claims regarding conduct occurring before the entry of the plea and may only assert a claim that contends plea counsel's representation rendered defendant's plea involuntary). Nor is there any reason to think that such a motion, if filed, would have succeeded, given that Illinois law permits the "interception, recording, or transcription of an electronic communication by an employee of a penal institution." 720 ILCS 5/14-2(d)(2) (West 2014).

¶ 38    In summary, we agree with OSAD that there is no good-faith basis to argue that defendant's plea was involuntary or that he received ineffective assistance of counsel in making his guilty plea. Accordingly, no meritorious argument exists that the trial court erred in denying defendant's motion to the extent that it sought to withdraw the guilty plea.

¶ 39    OSAD further concludes that it cannot argue in good faith that the trial court erred in denying defendant's motion to reconsider the sentence. We agree.

11

¶ 40    The trial court must base its sentencing on the specific facts of the case, considering defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age. *People v. Fern*, 189 Ill. 2d 48, 53 (1999). We presumptively defer to the trial court's sentencing decision "because the trial judge, having observed the defendant and the proceedings, has a far better opportunity to consider these factors than the reviewing court, which must rely on the 'cold' record." *Id.* Accordingly, we may not substitute our judgment for that of the trial court merely because we might have weighed the factors differently. *Id.* at 53-54. We will not disturb a sentence within the statutory range unless it is "greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense." *Id.* at 54.

¶ 41    Defendant was convicted of armed robbery, a Class X offense with a sentencing range of 6 to 30 years' imprisonment. 720 ILCS 5/18-2(a)(1), (b) (West 2014); 730 ILCS 5/5-4.5-25(a) (West 2014). Defendant's 21-year sentence fell slightly above the midpoint of that range. As noted, defendant had been convicted of several serious felonies and was on mandatory supervised release when he committed the offense at issue. We cannot say the circuit court abused its discretion in sentencing defendant, and thus its refusal to reconsider the sentence was not an abuse of discretion either.

¶ 42    Addressing defendant's specific complaints does not alter this conclusion. Defendant's principal claim was that, despite the State's agreement to remove the firearm enhancement from the charge, the sentencing hearing proceeded as if it had not. He complained that the hearing was replete with references to a firearm and that the sentence imposed was coincidentally the minimum sentence available had the firearm enhancement remained part of the charge.

¶ 43    As to the former point, defendant's motion cited no authority, and we are aware of none, that the State's removing the firearm enhancement from the charge prohibited mentioning a

12

firearm at all. In sentencing, the court must consider many relevant factors, including "the nature and circumstances of the offense, including the nature and extent of each element of the offense as committed by the defendant." (Internal quotation marks omitted.) *People v. Saldivar*, 113 Ill. 2d 256, 268-69 (1986). The use of a firearm was part of the "nature and circumstances of the offense."

¶ 44 As to the latter point, the State fulfilled its agreement by amending the charge to exclude the firearm enhancement. Nothing in the record shows that the resemblance of the sentence to the minimum sentence with the firearm enhancement added was anything more than a coincidence. Indeed, the court specifically warned the State to "be careful" once it mentioned the firearm at the sentencing hearing.

¶ 45 Defendant's motion also alleged that the PSI "contained inaccurate and unverified information," was "slanted against him," and referred to the use of a firearm during the offense. When questioned about this, the only specific example defendant provided was that the report misnamed someone who was listed as defendant's sibling but was actually just one of defendant's close friends. This information, however, was corrected. Some of the other information in the report was indeed unverified, but defendant did not specifically contend it was inaccurate. Defense counsel stated that she had "ascertained any changes or corrections" defendant had prior to the hearing.

¶ 46 As to the report being "slanted against" defendant and including his juvenile record, the report is statutorily required to contain "defendant's history of delinquency or criminality." 730 ILCS 5/5-3-2(a)(1) (West 2016). Where, as here, defendant had an extensive criminal history, the PSI will not necessarily paint a flattering picture of him, but that is not its function and defendant

13

is not entitled to sentencing relief merely because the PSI contained the statutorily required information.

¶ 47    OSAD also concludes there is no merit to the contention that counsel was ineffective for failing to call mitigation witnesses at sentencing. Defendant specifically complained that he wanted his girlfriend to testify. Counsel, while unable to recall a specific conversation with defendant about mitigation witnesses, stated that if defendant had wanted his girlfriend called as a witness, counsel "would have called her as a witness."

¶ 48    Decisions about which witnesses to call are generally strategic ones. *People v. Wilborn*, 2011 IL App (1st) 092802, ¶ 79. In any event, "[a] claim that trial counsel failed to investigate and call a witness must be supported by an affidavit from the proposed witness." *People v. Enis*, 194 Ill. 2d 361, 380 (2000). In the absence of such an affidavit, we have no idea what the witness would have said and, therefore, defendant cannot establish that he was prejudiced by counsel's failure to call her.

¶ 49    OSAD notes the State incorrectly argued that, during a prior offense, defendant "was caught with a firearm in his vehicle," whereas the PSI stated defendant had the gun on his person. However, we fail to see how defendant was prejudiced by this minor discrepancy.

¶ 50    OSAD's final proposed issue is whether counsel complied with Rule 604(d). OSAD concludes that this issue would not be meritorious. We agree.

¶ 51    Rule 604(d) provides that where a guilty-plea defendant moves to withdraw the plea or reconsider the sentence:

"The defendant's attorney shall file with the trial court a certificate stating that the attorney has consulted with the defendant either by phone, mail, electronic means or in person to ascertain defendant's contentions of error in the sentence and the entry of the plea of guilty,

14

has examined the trial court file and both the report of proceedings of the plea of guilty and the report of proceedings in the sentencing hearing, and has made any amendments to the motion necessary for adequate presentation of any defects in those proceedings." Ill. S. Ct. R. 604(d) (eff. July 1, 2017).

¶ 52 Here, following our prior remand, newly appointed counsel filed the requisite certificate. He averred that he consulted with defendant to ascertain his contentions of error in connection with the guilty plea and the sentence, examined the court file and report of proceedings for the guilty plea and the report of proceedings for the sentencing hearing, and made any amendment to the motion necessary to adequately present any defects in the proceedings. There is nothing in the record to conclude otherwise. Thus, counsel fully complied with the rule.

¶ 53                                    CONCLUSION

¶ 54 For the reasons above, we agree with OSAD that this appeal presents no issue of arguable merit. We therefore grant OSAD leave to withdraw and affirm the circuit court's judgment.

¶ 55 Motion granted; judgment affirmed.